**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **CHARLES R. GANT, JR.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 14-1368** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Charles R. Gant, Jr. ("Plaintiff"), seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 12), Defendant's Motion for Summary Judgment (ECF No. 19), and Plaintiff's "Reply in Opposition to Defendant's Motion for Summary Judgment" (ECF No. 20).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1962, has a GED, and previously worked as a driver.  R. at 43-44, 253.  On September 30, 2011, Plaintiff applied for DIB and SSI, alleging disability beginning on March 1, 2006, due to heart disease, high blood pressure, asthma, and shortness of breath.  R. at 24, 226-27, 249, 252.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 89-136, 141-73.   On December 5, 2012, ALJ Christopher Willis held a hearing in Fayetteville, North Carolina, at which Plaintiff and a vocational expert ("VE") testified.  R. at 38-88.   Plaintiff amended his alleged onset date of disability to November 1, 2011, at the hearing.  R. at 24, 236.  On December 14, 2012, the ALJ issued a decision finding Plaintiff not disabled since the amended alleged onset date of disability of November 1, 2011, through the date of the decision.  R. at 21-37.   Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 22, 2014.  R. at 1-7, 18-20.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 23, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.   The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

**II**

**Summary of Evidence**

A.      **State Agency Medical Consultants**

On December 12, 2011, a state agency consultant, Audra Santema, SDM, assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 95-97, 106-08.  The consultant opined that, because of his back pain and shortness of breath, Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 95, 106.  Because of his uncontrolled hypertension, Plaintiff could climb ladders, ropes, or scaffolds frequently, but he could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs without limit.  R. at 96, 107.  Although he had no manipulative, visual, or communicative limitations, Plaintiff was to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and hazards.  R. at 96-97, 107-08.

On February 27, 2012, another state agency medical consultant, Sankar Kumar, M.D., also assessed Plaintiff's physical RFC.  R. at 119-21, 130-32.  Dr. Kumar opined that, because of his back pain and shortness of breath, Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 120, 131.  Because of his uncontrolled hypertension, Plaintiff could climb frequently, but he could balance, stoop, kneel, crouch, and crawl without limit.  R. at 120, 131.  Although he had no manipulative, visual, or communicative limitations, Plaintiff was to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and hazards.  R. at 120-21, 131-32.

**B.**     **John Midgley, M.D.**

On December 6, 2011, John Midgley, M.D., conducted a consultative examination of

Plaintiff.  R. at 432-38.  Dr. Midgley assessed Plaintiff's functional capability:

> Functional capability of the patient indicates he has a normal gait.  He has
> difficulty getting past the 60 to 75% of the stooping maneuver and bending at the
> knees due to back pain aggravated by this maneuver.  He also has difficulty
> touching his toes again because of low back pain precipitated by this maneuver.
> He can lift up on his heels and toes and can tandem walk.  He can open and close
> the door using the doorknob and elevate his hands and arms over his bed.  He can
> button and unbutton his clothes.  He can lift a 10 pound stool bending at the waist
> using both hands.

R. at 434.  Dr. Midgley opined that Plaintiff's chest pain was non-cardiac in etiology because of

his negative coronary angiogram in October 2007.  R. at 435.  Dr. Midgley believed that

Plaintiff's chest pain was more consistent with reflux esophagitis and dyspepsia, and he

recommended antacid treatment.  R. at 435.

The ALJ summarized the results of Dr. Midgley's examination in his decision:

> On December 6, 2011, medical consultant John Midgley, M.D., evaluated
> [Plaintiff] and he . . . noted mild to moderate objective findings.  [Plaintiff]
> reported that he continued to smoke cigars and marijuana, and that he had smoked
> a cigar per day since the age of 30.  He had normal gait during that exam, his
> lungs were clear, he had some trouble with bending and stooping because of back
> pain, but there were no focal neurological deficits, and his sensation was intact, he
> displayed full muscle strength, and he could perform the walking exercises during
> the exam.  Dr. Midgley wrote that, since [Plaintiff] experienced shortness of
> breath after walking two blocks, this factor placed him in the functional class II
> according to the New York Heart Association, which the undersigned notes does
> not reflect acute symptoms.  Notably, Dr. Midgley also wrote that [Plaintiff's]
> hypertension medication regime needed adjustment, which he indicated was a
> possible reason for his recurrent hypertension.

R. at 29-30 (citation omitted).

4

**C.      Hearing Testimony**

**1.      Plaintiff's Testimony**

The ALJ reviewed in his decision Plaintiff's testimony:

> [Plaintiff] alleges he is unable to work due to the pain, shortness of breath, and fatigue caused by his combined impairments.  He experiences fatigue constantly and has headaches every day that make it difficult to do anything.  He also stated he experiences shortness of breath even while sitting down.  He lost his most recent job because he missed too much work.  The company had to cut one position, so they let him go even though he had seniority.

R. at 28; *see* R. at 43-76.

**2.      VE Testimony**

The VE classified Plaintiff's past work as a driver as medium.[2]  R. at 77.  A hypothetical person of Plaintiff's same age, education, work experience, and the RFC outlined below in Part III could not perform Plaintiff's past work but could perform the light[3] jobs of marker, mail clerk, or photocopying machine operator.  R. at 77-79.  A person could not perform any work if that person would not be able to stay on task for at least two hours at a time because of medication side effects, headaches, high blood pressure, and shortness of breath.  R. at 79-80.  A person could not perform any work if that person would be off task 20% of the work day.  R. at 80.  A person would not be competitively employable if that person needed to be absent from work more than once per month or needed to take unscheduled rest breaks beyond those normally allowed at work.  R. at 81-82.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

## III

## Summary of ALJ's Decision

On December 14, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of November 1, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a marker, mail clerk, or photocopy machine operator.  R. at 26-33.  The ALJ thus found that he was not disabled from November 1, 2011, through the date of the decision.  R. at 33.

In so finding, the ALJ found that Plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following provisos: he can frequently climb ramps or stairs, but no climbing ladders, ropes, or scaffolds.  No more than occasional balancing and stooping.  He must avoid concentrated exposure to temperature extremes of heat, avoid concentrated exposure to odors, dust, gases, fumes, and other pulmonary irritants, but he must avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights.

R. at 28.

Regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his residual functional capacity, for the reasons explained herein."  R. at 28.  The ALJ found:

Despite [Plaintiff's] allegations, he lives with his 11-year-old son, whom he cares for.  He stated he could do chores around his home, but that he had to

6

take breaks while doing them.  [He] is able to drive, as the records show he has driven himself to appointments and he has even driven himself to the emergency room [R. at 442-60].  The evidence shows that he reported in October 2011 that he was doing a lot of lifting and manual labor at work [R. at 464].  Of course, he amended his onset date to November 2011, and the record does contain information supporting frequent absences from work [R. at 282-85].  However, his daily cigar smoking through at least September 2012 in the file, also further lessens his persuasiveness, as he alleges severe breathing difficulty, but he has smoked throughout the majority of the period.  [Plaintiff's] non-compliance shows that his limitations are not as severe as he has alleged.  The undersigned recognizes that [Plaintiff] testified that he had been unable to afford recommended treatment, as there was a period in which he was not insured.  However, the undersigned notes that there is no evidence in the record of [Plaintiff] having been refused treatment because of an inability to pay or otherwise being turned away from facilities that provide care to indigent and low-income patients.  Furthermore, the evidence reflects that even after he had insurance, he reported not filling all of his medications or letting his medications run out [R. at 468, 483].

R. at 30-31.

Regarding Dr. Midgley's opinion, the ALJ noted that "Dr. Midgley did not provide an opinion regarding [Plaintiff's] ability to work, but he did complete a thorough exam, and his findings are consistent with the undersigned's finding that [Plaintiff] can perform light work with postural and environmental limitations."  R. at 31 (citing R. at 432-38).

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),  1382c(a)(3)(A);  20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.    20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.    20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."    20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.    *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ (1) failed to weigh clinical evidence of Plaintiff's inability to perform full-time work or to work at the light exertional level; (2) failed to weigh clinical evidence of Plaintiff's multiple cardiac conditions; (3) failed to address Plaintiff's inability to afford his medications; (4) failed to address 14 medically determinable impairments; (5) ignored the medical opinions of Dr. Midgley, the consultative examiner; (6) based his determination of Plaintiff's credibility on evidence from outside the period at issue; and (7) based his determination of Plaintiff's credibility on improper and unexplained factors. Pl.'s Mem. Supp. Mot. Summ. J. 1-2, ECF No. 12-1. Plaintiff asserts that he is limited to sedentary work,[5] which would render him disabled under 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14. *Id.* at 2, 7-8. He also maintains that remand is warranted under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Pl.'s Reply 1-16, ECF No. 20.

Plaintiff contends that the ALJ failed to weigh 14 medically determinable impairments from the severity and RFC analyses. Pl.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 12-1.

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

"While the Commissioner's decision must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based,'" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting 42 U.S.C. § 405(b)(1)), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Id.* (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)); *see Stitely v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-144, 2014 WL 5834700, at *6 (D. Md. Nov. 10, 2014), *aff'd per curiam sub nom. Stitely v. Colvin*, __ F. App'x __, No. 14-2302, 2015 WL 4621292 (4th Cir. Aug. 4, 2015). Furthermore, although Plaintiff asserts that his sleep apnea would cause daytime drowsiness precluding him from working full-time, he previously did not allege that his sleep apnea prevented him from working (R. at 89, 100, 113, 124, 252), and "[t]he ALJ need not consider an impairment if a claimant does not contend it contributes to his inability to work." *Stitely*, 2014 WL 5834700, at *6.

Plaintiff also contends that the ALJ failed to address the opinions of Dr. Midgley, the consultative examiner, who observed on testing that Plaintiff could lift 10 pounds (R. at 434). Pl.'s Mem. Supp. Mot. Summ. J. 7-9, ECF No. 12-1. Defendant maintains, however, that, to the extent that the ALJ erroneously found that Dr. Midgley's examination findings were consistent with a lifting capacity for light work, rather than sedentary work (R. at 31), the ALJ's error was harmless because the ALJ discussed other substantial evidence in the record to support his finding that Plaintiff could perform a range of light work. Def.'s Mem. Supp. Mot. Summ. J. 9, 10-11, ECF No. 19-1.

The Commissioner "must consider all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim,"

however.  *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980).  "Even if legitimate reasons

exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no

reason or for the wrong reason."  *Id.*  The Court "cannot determine if findings are unsupported

by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of

the relevant evidence."  *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight [she] has given to obviously probative exhibits, to say that
> [her] decision is supported by substantial evidence approaches an abdication of
> the court's "duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational."

*Id.* at 236 (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir.

1977)).  The duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did

and why he did it.'"  *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999)

(quoting *Lane Hollow Coal Co. v. Dir., OWCP*, 137 F.3d 799, 803 (4th Cir. 1998)).

Thus, because "a court may not guess at what an agency meant to say, but must instead

restrict itself to what the agency actually did say," *Nken v. Holder*, 585 F.3d 818, 822 (4th Cir.

2009), the Court cannot say that the ALJ's error in failing to weigh Dr. Midgley's findings

regarding Plaintiff's lifting capacity was harmless.  The parties dispute whether the opinion of

Dr. Midgley as a consultative examiner is entitled to significant weight.  Pl's Mem. Supp. Mot.

Summ. J. 8, ECF No. 12-1; Def.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 19-1.  However, just

as it is not the province of the Court to reweigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the ALJ, it is also not the province of the

Court "to engage in these exercises in the first instance." *Radford*, 734 F.3d at 296.  As noted

above, an ALJ must explain on the record the weight given to all of the relevant evidence and the

reason for rejecting such evidence in support of the claim.  The Court thus **REMANDS** this case

to the Commissioner for further proceedings for her to do so. The Court need not consider the other issues raised by Plaintiff. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 342 n.3 (4th Cir. 2012) (holding that ALJ committed legal error and accordingly declining to address ALJ's credibility findings or likely weight of evidence on remand); *Hardy v. Colvin*, Civil Action No. TMD 11-02793, 2013 WL 4478025, at *4 n.3 (D. Md. Aug. 19, 2013).[6]

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 12) is **GRANTED**. Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order shall issue.

Date: September 28, 2015                    _____/s/_____

                                            Thomas M. DiGirolamo
                                            United States Magistrate Judge

---

[6] The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his residual functional capacity" (R. at 28), which the Fourth Circuit found to be erroneous in *Mascio*, 780 F.3d at 639. Thus, "remand is appropriate so that the language can be altered and the credibility analysis can be bolstered or revised, as necessary." *Roxin v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2311, 2015 WL 3616889, at *3 (D. Md. June 5, 2015).